Joseph Hunt, appellant, v.
Pick's Pack-Hauler, Inc.,
and Great West Casualty
Company, Inc., appellees.
___ N.W.2d ___

Filed September 15, 2015.    No. A-14-937.

1. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

2. **Workers' Compensation.** Lump-sum settlements, in the context of workers' compensation, are governed by Neb. Rev. Stat. §§ 48-139, 48-140, and 48-141 (Reissue 2010).

3. ____. Every lump-sum settlement approved by order of the Workers' Compensation Court shall be final and conclusive unless procured by fraud.

4. ____. Upon paying the lump-sum settlement amount approved by the Workers' Compensation Court, the employer shall be discharged from further liability on account of the injury and shall be entitled to a duly executed release.

5. **Workers' Compensation: Releases.** Upon filing the duly executed release, the liability of the employer under any agreement, award, finding, or decree shall be discharged of record.

6. **Workers' Compensation.** Any lump-sum settlement by agreement of the parties pursuant to Neb. Rev. Stat. § 48-139 (Reissue 2010) shall be final and not subject to readjustment if the settlement is in conformity with the Nebraska Workers' Compensation Act, unless the settlement is procured by fraud.

7. ____. All amounts paid by an employer or by an insurance company carrying such risk, as the case may be, and received by the employee

or his or her dependents by lump-sum payments pursuant to Neb. Rev. Stat. § 48-139 (Reissue 2010) shall be final and not subject to readjustment if the lump-sum settlement is in conformity with the Nebraska Workers' Compensation Act, unless the settlement is procured by fraud.

8. ____. Neb. Rev. Stat. §§ 48-139, 48-140, and 48-141 (Reissue 2010) indicate that in the area of workers' compensation, lump-sum settlements are final and not subject to readjustment unless the settlement is procured by fraud.

9. ____. Neb. Rev. Stat. §§ 48-139, 48-140, and 48-141 (Reissue 2010) emphasize the finality of a lump-sum settlement and only contemplate readjustment if the settlement itself is procured by fraud, and the statutes do not speak to readjusting underlying awards allegedly procured by fraud.

10. **Workers' Compensation: Judgments: Time: Appeal and Error.** The Workers' Compensation Court may modify or change its findings, order, award, or judgment at any time before appeal and within 14 days after the date of such findings, order, award, or judgment.

11. **Workers' Compensation: Jurisdiction: Statutes.** As a statutorily created court, the Workers' Compensation Court is a tribunal of limited and special jurisdiction and has only such authority as has been conferred on it by statute.

12. **Workers' Compensation.** A party's allegations of fraud to readjust a lump-sum settlement must pertain to the procurement of the lump-sum settlement itself.

Appeal from the Workers' Compensation Court: LAUREEN K. VAN NORMAN, Judge. Affirmed.

Rolf Edward Shasteen, of Shasteen & Morris, P.C., L.L.O., for appellant.

Jason A. Kidd, of Engles, Ketcham, Olson & Keith, P.C., for appellees.

MOORE, Chief Judge, and PIRTLE and BISHOP, Judges.

BISHOP, Judge.

In August 2000, Joseph Hunt injured his right arm in the course and scope of his employment as a truckdriver with Pick's Pack-Hauler, Inc. The parties entered into a lump-sum

- 280 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
23 NEBRASKA APPELLATE REPORTS
HUNT v. PICK'S PACK-HAULER
Cite as 23 Neb. App. 278

settlement agreement in accordance with an award of benefits entered by the Nebraska Workers' Compensation Court following trial; the compensation court approved the settlement in 2003. Pick's Pack-Hauler paid Hunt pursuant to the settlement, and Hunt filed a satisfaction and release of Pick's Pack-Hauler's liability in June 2003.

In 2013, Hunt filed a petition in the compensation court seeking to set aside the lump-sum settlement on the basis of constructive fraud, alleging that his treating physician had incorrectly determined that he had reached maximum medical improvement (MMI) at the time of the 2003 settlement. The compensation court granted the motion for summary judgment of Pick's Pack-Hauler and its insurer, Great West Casualty Company, Inc. (Great West), and dismissed Hunt's petition. Hunt now appeals; we affirm.

## BACKGROUND

On August 30, 2000, Hunt (age 34 at the time) injured his right arm while securing a trailerload during his employment with Pick's Pack-Hauler. He first sought treatment from his family doctor on September 5 and was prescribed anti-inflammatory medication and shown exercises to relieve pain "'in his right biceps area.'" Hunt did not seek medical treatment again until April 6, 2001, when he returned to his family doctor with complaints of pain in his right shoulder. Hunt was referred to Dr. Gary Chingren, an orthopedic doctor. In a letter dated April 21, 2001, Dr. Chingren noted that Hunt's injury would be a "long term problem" and stated that it could take "6 to 9 months for things to get well."

In September 2001, due to Hunt's continued pain, an MRI was taken of his right shoulder. Dr. Chingren noted the MRI reflected a "full thickness rotator cuff tear." Hunt filed a petition in the Workers' Compensation Court on September 24.

After undergoing additional conservative care, Dr. Chingren performed right shoulder surgery on Hunt on October 10, 2001. Hunt continued to see Dr. Chingren for postoperative

- 281 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
HUNT v. PICK'S PACK-HAULER
Cite as 23 Neb. App. 278

checkups through February 2002. At this February appointment, Dr. Chingren noted that Hunt reported that his arm ached and hurt, but that medication helped. Dr. Chingren noted that Hunt may have ruptured his right biceps tendon "at some point in time."

In a letter dated November 1, 2002, Dr. Chingren stated that at Hunt's 1-year postoperative visit in October, his examination was "essentially the same as it was in July," and that Hunt had made "very satisfactory progress." Dr. Chingren determined Hunt had a 14-percent impairment rating for his right upper extremity.

Trial on Hunt's petition was held on January 14, 2003. The court entered an award on March 14. The court found that Hunt sustained a right arm injury as the result of an accident arising out of and in the course of his employment with Pick's Pack-Hauler. The court found that as a result of Hunt's work accident and injury, he was temporarily and totally disabled from October 9, 2001, to January 9, 2002, which was when Dr. Chingren released Hunt to work light duty. Thereafter, the court found that Hunt sustained a 14-percent permanent partial impairment to his right arm, in accordance with Dr. Chingren's impairment rating. The court determined Hunt's average weekly wage was $775.02, entitling him to temporary total disability benefits of $487 per week for 13²⁄₇ weeks, and $487 per week for 30.1 weeks for his 14-percent permanent partial disability to his right arm. The award also ordered Pick's Pack-Hauler to pay for certain medical bills incurred by Hunt and to reimburse Hunt's insurance company and Medicare. The court did not award Hunt future medical treatment, concluding that Hunt had not submitted evidence suggesting it would be required.

On April 23, 2003, the parties filed an "Application for Approval of Final Lump Sum Settlement" in the Workers' Compensation Court. The settlement application stated that the settlement was

- 282 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
HUNT v. PICK'S PACK-HAULER
Cite as 23 Neb. App. 278

intended to cover all injuries, ailments, and diseases, both physical and mental, and the aggravation of pre-existing conditions, of whatsoever kind or character arising out of or in any way connected with the [August 20, 2000,] accident alleged herein and resultant injuries, including future developments thereof, whether now known or hereafter to become known.

The settlement application provided that the parties had reached a final lump-sum settlement agreement wherein Pick's Pack-Hauler agreed to pay the lump-sum amount of $22,128.84, which constituted all the indemnity and medical benefits awarded to Hunt in the court's March 14, 2003, award, plus $1,000 in additional consideration in full satisfaction of all of Hunt's claims resulting from his August 30, 2000, accident. The settlement application stated that Hunt had considered the "possibility of future developments of said accident and injuries, the extent and nature of which, however, at the present time are unknown to [Hunt] and which cannot be ascertained."

On June 18, 2003, the compensation court entered an order approving the parties' settlement application. On June 23, Hunt filed a satisfaction of lump-sum settlement and released Pick's Pack-Hauler from further liability.

More than 10 years later, on November 7, 2013, Hunt filed a petition to set aside the lump-sum settlement on the basis of fraud pursuant to Neb. Rev. Stat. § 48-139(2)(c) (Reissue 2010). Hunt alleged that the settlement "failed, through no intent of the parties, to completely disclose all of the salient medical facts and circumstances necessary for the court to develop a fully informed opinion as to the advisability of approval." Specifically, Hunt alleged that the "true medical condition of [his] right shoulder at the time of settlement was actually and, in fact, unknown."

Pick's Pack-Hauler and Great West filed a motion to dismiss Hunt's petition on December 6, 2013. The court entered an order on January 9, 2014, overruling Pick's Pack-Hauler and

Great West's motion, concluding that Hunt was entitled to a hearing to determine if the allegations of fraud in his petition entitled him to relief.

Pick's Pack-Hauler and Great West filed a motion for summary judgment on June 3, 2014, alleging that Hunt failed to establish that the lump-sum settlement constituted a constructive fraud upon the court. A hearing on the motion was held on June 25.

According to evidence submitted at the summary judgment hearing, in November 2011, Hunt sustained a subsequent injury to his right shoulder while employed by Rosen's Diversified, also known as Gibbon Packing (Gibbon Packing). Medical evidence from Hunt's workers' compensation claim against Gibbon Packing reflected that he was treated by Scott Franssen, D.O., subsequent to his November accident. In January 2012, Dr. Franssen stated his medical opinion that Hunt's "right shoulder current symptomatology is an aggravation of a pre-existing condition." Dr. Franssen stated Hunt had "advanced posttraumatic osteoarthritic [changes and] a full thickness tear of his rotator cuff" that "has severe retraction," noting that an "outside orthopod [Dr. Chingren]" had previously repaired it in 2000-2001. Dr. Franssen recommended conservative care, but thought Hunt "probably" would need a total shoulder arthroplasty "down the road."

Dr. Brent Adamson performed an independent medical evaluation (IME) on August 23, 2012. Dr. Adamson concluded that Hunt's diagnosis was "chronic retracted rotator cuff tear of right shoulder, degenerative arthritis of right shoulder." Dr. Adamson opined that the etiology of Hunt's symptoms at the time of the IME were related to his August 30, 2000, injury and concluded that Hunt had temporarily aggravated a preexisting condition as a result of his November 2011 accident. Dr. Adamson concluded that Hunt did not suffer from any permanent partial disability of his right shoulder over and above the 14 percent that was rated in 2001, and Dr. Adamson said he would not recommend surgery.

- 284 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
HUNT v. PICK'S PACK-HAULER
Cite as 23 Neb. App. 278

According to Hunt, he entered into a release of liability with Gibbon Packing, which release was filed in the Workers' Compensation Court in January 2013. Such release did not provide for future medical care of his right shoulder. No other terms of Hunt's settlement with Gibbon Packing appear in our record.

Through Hunt's interrogatories entered into evidence at the summary judgment hearing in the instant case, he clarified that his claim for constructive fraud was based on his reliance on Dr. Chingren's opinion in 2002 that Hunt was at MMI. Hunt believed that the opinions of Drs. Franssen and Adamson given in 2012 indicate Hunt's right shoulder condition had gotten worse and that therefore Dr. Chingren falsely, though unintentionally, represented that Hunt had reached MMI in 2002.

The compensation court in the instant case entered an order on September 29, 2014, sustaining Pick's Pack-Hauler and Great West's motion for summary judgment. The court stated that Hunt was represented by counsel, participated in trial, and obtained an award based in part on the opinion of his own treating physician, and that the subsequent settlement was based upon a fully litigated award. The court concluded that "[t]o argue nearly 10 years later that a doctor's opinion which may or may not have been incorrect at the time it was offered is not constructive fraud" for purposes of setting aside the lump-sum settlement. The court therefore granted Pick's Pack-Hauler and Great West's motion for summary judgment and dismissed Hunt's petition.

Hunt timely appeals.

## ASSIGNMENT OF ERROR

Hunt assigns two errors on appeal, which we summarize and consolidate as one: The Workers' Compensation Court erred in granting summary judgment based on its conclusion that Dr. Chingren's opinion that Hunt had reached MMI did not constitute constructive fraud.

## STANDARD OF REVIEW

[1] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Marcuzzo v. Bank of the West*, 290 Neb. 809, 862 N.W.2d 281 (2015).

## ANALYSIS

[2-8] Hunt sought to set aside the parties' lump-sum settlement approved by the compensation court in 2003 on the basis of constructive fraud. Hunt's petition in the instant case claimed that the application for lump-sum settlement submitted to the court in 2003 was inaccurate and perpetrated a constructive fraud on the court within the meaning of § 48-139. Hunt filed this action to set aside the lump-sum settlement itself, so we begin by examining the relevant statutes. Lump-sum settlements, in the context of workers' compensation, are governed by § 48-139 and Neb. Rev. Stat. §§ 48-140 and 48-141 (Reissue 2010). Section 48-139(2)(c) provides in relevant part:

> Every such lump-sum settlement approved by order of the compensation court shall be final and conclusive *unless procured by fraud*. Upon paying the amount approved by the compensation court, the employer (i) shall be discharged from further liability on account of the injury . . . and (ii) shall be entitled to a duly executed release. Upon filing the release, the liability of the employer under any agreement, award, finding, or decree shall be discharged of record.

(Emphasis supplied.) Section 48-140 provides in part: "Any lump-sum settlement by agreement of the parties pursuant to section 48-139 shall be final and not subject to readjustment if the settlement is in conformity with the Nebraska Workers' Compensation Act, *unless the settlement is procured*

- 286 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
HUNT v. PICK'S PACK-HAULER
Cite as 23 Neb. App. 278

*by fraud*." (Emphasis supplied.) Finally, § 48-141 provides in relevant part:

> All amounts paid by an employer or by an insurance company carrying such risk, as the case may be, and received by the employee or his or her dependents by lump-sum payments pursuant to section 48-139 shall be final and not subject to readjustment if the lump-sum settlement is in conformity with the Nebraska Workers' Compensation Act, *unless the settlement is procured by fraud* . . . .

(Emphasis supplied.) The language used in §§ 48-139, 48-140, and 48-141 indicate that in the area of workers' compensation, lump-sum settlements are final and not subject to readjustment "unless the settlement is procured by fraud." In Hunt's petition, he claimed that the "contents of the Application for Lump Sum Settlement developed by the parties and submitted to the court was inaccurate and operated in such a manner as to perpetrate a constructive fraud upon the court within the meaning of . . . § 48-139." Hunt further claimed that

> the Lump Sum Settlement Application failed, through no intent of the parties, to completely disclose all of the salient medical facts and circumstances necessary for the court to develop a fully informed opinion as to the advisability of approval. Specifically, the parties so failed because the true medical condition of [Hunt's] right shoulder at the time of settlement was actually and, in fact, unknown.
>
> . . . Without true and correct information about the condition of [Hunt's] right shoulder, the Court was deprived of the opportunity to fairly and accurately evaluate the representations contained in the Application for Lump Sum Settlement, and, accordingly, it approved [the] same on medical representations which were inaccurate, but not known to be so, at the time they were made.

While Hunt argues that the "Court was deprived of the opportunity to fairly and accurately evaluate the representations"

- 287 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
HUNT v. PICK'S PACK-HAULER
Cite as 23 Neb. App. 278

made in the lump-sum settlement application and that the "medical representations . . . were inaccurate," it is significant to remember that the "representations" contained in the lump-sum settlement in this case were derived from actual trial court findings set forth in the March 14, 2003, award. The terms of the lump-sum settlement were not the result of any party misrepresenting Hunt's medical information to induce a settlement through pretrial negotiations; rather, the terms flowed directly from the compensation court's award following trial. There is no dispute that the parties relied upon the compensation court's March 14 award when entering into the lump-sum settlement. The total amount paid to Hunt, $22,128.84, constituted all the indemnity and medical benefits awarded to Hunt in the court's March 14 award, plus $1,000 in additional consideration.

[9-12] Hunt makes no allegation that any party engaged in fraudulent action to procure the lump-sum settlement itself; rather, his allegations of "fraud" pertain solely to allegedly erroneous medical evidence offered and accepted by the compensation court at trial in 2003. Hunt is apparently asking us to conclude that there is a genuine issue of material fact sufficient to overcome summary judgment with regard to his argument that (1) certain trial evidence was constructively "fraudulent" in this case, and therefore, (2) such "fraudulent" information was then relied upon in the lump-sum agreement, and therefore, (3) the lump-sum agreement was "procured by fraud" as contemplated by the lump-sum settlement statutes set forth previously. We do not read the lump-sum settlement statutes to provide a mechanism for challenging the evidence upon which an award is based; rather, we read the statutes as being limited to challenging lump-sum settlements which may have been procured by fraud. Sections 48-139, 48-140, and 48-141 emphasize the finality of a lump-sum settlement and only contemplate "readjustment" if the "settlement" itself is procured by fraud; the statutes do not speak to readjusting underlying "awards" allegedly procured by fraud. And, while

- 288 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
HUNT v. PICK'S PACK-HAULER
Cite as 23 Neb. App. 278

the compensation court may modify or change its findings, order, award, or judgment at any time before appeal and within 14 days after the date of such findings, order, award, or judgment, see Neb. Rev. Stat. § 48-180 (Cum. Supp. 2014), and may modify as set forth in § 48-141, Hunt's position does not fall within either of those statutes. Nor does Hunt point us to any authority that would allow the compensation court to set aside or modify a fully litigated award more than 10 years after its entry on the basis of alleged constructive fraud occurring during trial. As a statutorily created court, the Workers' Compensation Court is a tribunal of limited and special jurisdiction and has only such authority as has been conferred on it by statute. *Cruz-Morales v. Swift Beef Co.*, 275 Neb. 407, 746 N.W.2d 698 (2008). Because Hunt's allegations of fraud do not pertain to the procurement of the lump-sum settlement as contemplated by §§ 48-139 to 48-141, but instead pertain only to trial evidence upon which the court's March 14, 2003, award was made, the compensation court properly dismissed Hunt's petition to set aside the lump-sum settlement.

For the sake of completeness in addressing the arguments advanced by Hunt, even if we were to accept his position that constructive fraud occurring at the trial level could carry over to the lump-sum settlement made in accordance with the trial court's award, Hunt's argument still fails. Our courts have never determined whether constructive fraud, if properly proved, would be sufficient to reopen or readjust a lump-sum settlement under §§ 48-139 to 48-141. However, we need not determine that issue at this time, because we conclude the record in the instant case affirmatively demonstrates that the lump-sum settlement itself was not procured by fraud, constructive or otherwise.

Hunt refers to Professor Larson's treatise to support his argument that a physician's mistake constitutes "'constructive fraud'" sufficient to reopen a lump-sum settlement. Brief for appellant at 9. According to Professor Larson, courts have

- 289 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
23 NEBRASKA APPELLATE REPORTS
HUNT v. PICK'S PACK-HAULER
Cite as 23 Neb. App. 278

found constructive fraud sufficient to justify reopening a settlement where an innocent misrepresentation has been made by a physician chosen by the employer or its insurer, and those representations have been relied on by the claimant. Professor Larson continues, "If, however, claimant has relied on the representations of her own physician, there has been no fraud." 13 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 131.05[1][b] at 131-48 (2015). Therefore, even if we did adopt Professor Larson's position, as Hunt urges us to do, it would not support the reopening of the parties' lump-sum settlement in this case. Hunt alleges the basis of the constructive fraud was that Dr. Chingren incorrectly placed him at MMI in 2002. Dr. Chingren was Hunt's own physician, not a physician chosen by Pick's Pack-Hauler and Great West. According to Professor Larson, if a claimant relied on representations of his own physician, there has been no fraud. Therefore, according to Hunt's own cited authority, he would not be entitled to reopen the lump-sum settlement on the basis of constructive fraud.

Furthermore, the record before us affirmatively refutes Hunt's factual allegations of constructive fraud. Hunt argues that summary judgment was inappropriate because "there is a question of fact as to whether Dr. Chingren's representation that . . . Hunt's condition became permanent and therefore that he reached MMI in November 1, 2002[,] constituted constructive fraud." Brief for appellant at 10. Hunt goes on to assert:

> [I]f the statement of Dr. Chingren, although made without an evil intent, was false, it had a tendency to deceive . . . Hunt, his attorney, and the court, both during the trial and when the court approved the lump sum settlement. Had the truth about the seriousness of . . . Hunt's condition been known at the time, . . . Hunt would not have filed his application for lump sum settlement, and the court would not have approved it. Therefore, there is a genuine issue of material fact as to whether this

- 290 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
HUNT v. PICK'S PACK-HAULER
Cite as 23 Neb. App. 278

statement constitutes constructive fraud and provides a basis for the lump sum settlement to be set aside.

*Id*. at 10-11.

In support of his argument, Hunt relies on the medical evidence from his November 2011 work injury with Gibbon Packing to suggest that Dr. Chingren's opinion was false when it was made. Hunt cites to Dr. Adamson's IME conducted in August 2012 (nearly 10 years after Dr. Chingren placed Hunt at MMI), in which Dr. Adamson opined that "[a]ll of [Hunt's] current disability is related to his original injury of 2000." In looking at the entirety of Dr. Adamson's IME report, however, he clearly states that Hunt temporarily aggravated a preexisting condition as a result of his November 2011 work accident; such aggravation lasted 2 months; and after that 2-month period, Hunt again reached MMI. Dr. Adamson concluded that once Hunt reached MMI after the temporary aggravation, he did not suffer from any permanent partial disability of his right shoulder over and above the 14 percent that Dr. Chingren had previously rated him. Hunt had reported to Dr. Adamson that "his shoulder is no worse than it was three or four years ago" and "he can do everything now that he could do prior to the injury he sustained at Gibbon Packing." Dr. Adamson's report, therefore, actually supports Dr. Chingren's permanency rating provided to Hunt in 2002. Dr. Franssen likewise was of the opinion that Hunt's "right shoulder current symptomatology is an aggravation of a pre-existing condition"; Dr. Franssen did not opine or suggest that Hunt was not at MMI until his November 2011 work accident.

The evidence in our record reflects that subsequent to Dr. Chingren's permanency rating in 2002, Hunt continued to work for various employers in a variety of capacities for the next nearly 10 years. There is no evidence in our record that Hunt sought medical treatment for his right shoulder until the November 2011 work accident with Gibbon Packing, wherein he aggravated his preexisting shoulder condition. The facts in

- 291 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
23 NEBRASKA APPELLATE REPORTS
HUNT v. PICK'S PACK-HAULER
Cite as 23 Neb. App. 278

this case simply do not support a claim of constructive fraud for purposes of reopening or readjusting a lump-sum settlement, even assuming such a claim could be made based upon the alleged erroneous opinion of a claimant's own physician more than 10 years after the matter was fully litigated.

## CONCLUSION

For the foregoing reasons, we affirm the Workers' Compensation Court's order granting summary judgment in favor of Pick's Pack-Hauler and Great West and dismissing Hunt's petition.

AFFIRMED.